# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Ashley Isberg

**DEFENDANTS**

Rocket Mortgage, LLC

**(b)** County of Residence of First Listed Plaintiff   Oakland County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Wayne County
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
R.J. Cronkhite (P78374); Steven M. Couch (P758333); Gregory A. Dallas (P88475)
Cronkhite Counsel PLLC, 36800 Woodward Ave., Ste. 310, Bloomfield Hills,MI 48304
(248) 309-8601

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | | [ ] 820 Copyrights | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 830 Patent | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | | [ ] 840 Trademark | [ ] 460 Deportation |
| | | [ ] 370 Other Fraud | **LABOR** | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 371 Truth in Lending | [ ] 710 Fair Labor Standards Act | | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 380 Other Personal Property Damage | [ ] 720 Labor/Management Relations | **SOCIAL SECURITY** | [ ] 485 Telephone Consumer Protection Act |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 385 Property Damage Product Liability | [ ] 740 Railway Labor Act | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | | [ ] 751 Family and Medical Leave Act | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise | | | [ ] 790 Other Labor Litigation | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 791 Employee Retirement Income Security Act | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [x] 442 Employment | [ ] 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 950 Constitutionality of State Statutes |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | | |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Family and Medical Leave Act and Americans with Disabilities Act

Brief description of cause:
Claims under the Family Medical Leave Act, Americans with Disabilities Act and Michigan Persons with Disabilities Civil Rights Act related claims.

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
>$75,000.00

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [x] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____

DOCKET NUMBER _____

DATE
March 10, 2026

SIGNATURE OF ATTORNEY OF RECORD
/s/ R.J. Cronkhite

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**ASHLEY ISBERG**, an individual,

     *Plaintiff*,                                                    Case No.
                                               Hon.

v.

**ROCKET MORTGAGE, LLC**, a Michigan                **JURY DEMANDED**
limited liability company,

     *Defendant.*

---

R.J. Cronkhite (P78374)
Steven M. Couch (P75833)
Gregory A. Dallas (P88475)
Cronkhite Counsel PLLC
36800 Woodward Ave., Ste. 310
Bloomfield Hills, MI 48304
T: (248) 309-8601
F: (248) 256-2555
rj@cronkhitelaw.com
steve@cronkhitelaw.com
greg@cronkhitelaw.com
*Attorneys for Plaintiff*

---

**COMPLAINT AND JURY DEMAND**

Plaintiff Ashley Isberg ("**Isberg**" or "**Plaintiff**"), through her attorneys Cronkhite

Counsel PLLC, files her Complaint and Jury Demand against Defendant Rocket Mortgage,

LLC, ("**Defendant**" or "**Rocket Mortgage**"), stating as follows:

## NATURE OF THE DISPUTE

1.      This suit involves Defendant Rocket Mortgage's illegal discrimination, failure to accommodate, hostile work environment, failure to engage in the interactive process, and retaliation against Isberg in violation of both Federal and Michigan law, including the Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601 *et seq.* (the "**FMLA**"), the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq.* (the "**ADA**"), and Michigan's Persons with Disabilities Civil Rights Act, MCL 37.1101 *et seq.* (the "**PWDCRA**").

## PARTIES

2.      Plaintiff Ashley Isberg is an individual residing in the City of White Lake, Oakland County, Michigan.

3.      Defendant Rocket Mortgage, LLC, is a Michigan limited liability company with its principal place of business in the City of Detroit, Wayne County, Michigan.

## JURISDICTION AND VENUE

4.      On October 11, 2025, Isberg timely filed a charge of employment discrimination on the basis of disability against Rocket Mortgage with the Equal Employment Opportunity Commission ("**EEOC**") within 300 days of the commission of the unlawful employment practices alleged in this claim.

5.      On December 12, 2025, Isberg received notification of the right-to-sue letter from the Equal Employment Office ("**EEOC**") and timely filed this Complaint within 90 days of receiving the EEOC's notice of the right to sue.

6.     This Court has subject matter jurisdiction over this case's claims pursuant to 28 U.S.C. § 1331: Federal questions arise under the ADA and FMLA.

7.     With respect to any claims asserted herein that fall outside of the Court's original subject matter jurisdiction, the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1367 because all of the asserted state law claims arise out of a common nucleus of operative facts and form part of the same case or controversy.

8.     This Court has personal jurisdiction over Rocket Mortgage pursuant to MCL 600.711 because Rocket Mortgage carries on a continuous and systemic part of their general business within the state of Michigan.

9.     This Court also has personal jurisdiction over Rocket Mortgage pursuant to MCL 600.715, because Rocket Mortgage committed torts within the State of Michigan and the consequences of those torts also occurred within the State of Michigan, as set forth in this Complaint.

10.    Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Isberg's claims occurred in this District.

## GENERAL ALLEGATIONS

11.    Isberg has four (4) medically-diagnosed disabilities and serious heath conditions, including Postural Orthostatic Tachycardia Syndrome ("**POTS**"), Hashimoto's disease, anxiety, and depression.

12.     POTS is an autonomic nervous system disorder that, among other issues, causes occasional fainting.

13.     Because Isberg has POTS, driving risks fatal injuries to Isberg and others.

14.     Indeed, the non-profit organization, Awareness for POTSies, notes that "[d]riving with POTS can be challenging, and there are many living with POTS who struggle to drive or are no longer able to drive safely."

15.     Hashimoto's disease (or Hashimoto's thyroiditis) is a chronic autoimmune disorder where the immune system attacks the thyroid gland, leading to hypothyroidism (underactive thyroid) and, commonly, a goiter, i.e., enlargement of the thyroid gland.

16.     Hashimoto's disease causes a multitude of symptoms, most notably, severe fatigue.

17.     POTS qualifies as a disability under the ADA and the PWDCRA.

18.     Hashimoto's disease qualifies as a disability under the ADA and the PWDCRA.

19.     Anxiety qualifies as a disability under the ADA and the PWDCRA.

20.     Depression qualifies as a disability under the ADA and the PWDCRA.

21.     POTS qualifies as a serious health condition under the FMLA.

22.     Hashimoto's disease qualifies as a serious health condition under the FMLA.

23.     Anxiety qualifies as a serious health condition under the FMLA.

24.     Depression qualifies as a serious health condition under the FMLA.

25.     On August 22, 2016, Isberg joined Rocket Mortgage as a Claims Specialist—an entry-level position.

26.     Throughout her employment with Rocket Mortgage, Isberg served Rocket Mortgage with skill and fidelity.

27.     During her tenure at Rocket Mortgage, Isberg performed exceptionally well, and Rocket Mortgage repeatedly praised Isberg's performance.

28.     For a time, Rocket Mortgage rewarded Isberg's exceptional performance by giving Isberg annual raises, bonuses, and promotions.

29.     Additionally, Isberg routinely received exceptional performance reviews during her time at Rocket Mortgage, consistently receiving the Performance Rating of "Exceeds Expectations" and Performance Trend of "Accelerating."

30.     In fact, Isberg's performance was so exceptional that Rocket Mortgage invited Isberg to join Rocket Mortgage's leadership development program—Aspiring Leaders—a program which Rocket Mortgage reserves for Rocket Mortgage's future leaders.

31.     In March through June of 2023, Isberg completed the 10-week Aspiring Leaders Program.

32.     Rocket Mortgage further commended Isberg's exceptional performance after she identified inefficiencies in Rocket Mortgage's underutilization of its BKC Claims System—thereby saving Rocket Mortgage upwards of $100,000 annually—and spearheaded an effort to drive Rocket Mortgage's initiative to reintroduce an automated claims system.

33.     Isberg's exceptional performance was recognized not only by Rocket Mortgage's leadership and management, but also by her peers, as evidenced by her receipt of multiple honors from her peers, including Team MVP and "AMAZE Awards."

34.     Isberg's exceptional performance—and Rocket Mortgage's recognition thereof—resulted in Isberg's accelerated professional growth and her rapid career progression within Rocket Mortgage's organizational structure, as evidenced by her numerous promotions, awards, and performance reviews.

35.     Isberg's promotion history at Rocket Mortgage bears testament to Isberg's exceptional abilities and commitment.

36.     In 2018, Rocket Mortgage promoted Isberg to Executive Claims Specialist and increased her pay.

37.     In 2019, in further recognition of Isberg's performance, Rocket Mortgage promoted Isberg to Claims Oversight Strategist and again increased her pay.

38.     In 2020, Rocket Mortgage once again promoted Isberg to Continuous Improvement Architect.

39.     In 2023, Rocket Mortgage again promoted Isberg to Senior Applications Analyst.

40.     However, Rocket Mortgage intentionally derailed Isberg's career after Isberg notified Rocket Mortgage of her above disabilities and began requesting medical accommodations for them.

41.     In 2023, Isberg requested medical accommodations from Rocket Mortgage, including to work from home due to her medical conditions.

42.     Rocket Mortgage initially granted Isberg her requested medical accommodations and allowed her to work from home.

43.     Isberg was able to complete her job duties by working at home, i.e., with her requested medical accommodations.

44.     In October of 2024, Isberg returned to work following a period of medical leave.

45.     Upon Isberg's return to work, Isberg learned that Rocket Mortgage had reassigned most of Isberg's job duties to a non-disabled colleague.

46.     Rocket Mortgage did not restore those duties to Isberg at any time after her return to work and refused to assign Isberg similar replacement duties.

47.     Further, Rocket Mortgage stopped assigning Isberg projects, segregated Isberg at work, and removed Isberg from project-related communications.

48.     Rocket Mortgage also stopped providing Isberg promotions.

49.     Rocket Mortgage also refused to further train Isberg for a leadership role at Rocket Mortgage.

50.     Rocket Mortgage took these actions in discrimination of, and retaliation against, Isberg based on her disabilities, serious health conditions, and the exercise of her accommodation rights under the ADA and PWDCRA, as well as for Isberg exercising her leave rights under the FMLA.

51.    On December 4, 2024, Isberg submitted another written request for accommodations so that Isberg could work remotely rather than drive to work and risk injury to herself and others.

52.    Isberg's December 4, 2024 accommodation request was based on certified medical paperwork stating that it was unsafe for Isberg to drive to Rocket Mortgage due to her POTS disability.

53.    In May of 2025, Director Latresha Edwards met with Isberg.

54.    During that meeting, Director Edwards suggested that Isberg resign from Rocket Mortgage due to Isberg's disabilities and serious health conditions, and accepting a separation package from Rocket Mortgage, replete with a release of Isberg's legal claims.

55.    Isberg was shocked, dismayed, and humiliated by Director Edward's suggestion that Isberg resign from Rocket Mortgage due to Isberg's disabilities and serious health conditions.

56.    Isberg did not agree to resign from Rocket Mortgage.

57.    On June 13, 2025, Bianca Puglise, Rocket Mortgage's Team Leader - Team Relations, organized a meeting with Isberg and Director Edwards.

58.    During the June 13, 2025, Rocket Mortgage—through Team Leader Puglise and Director Edwards—again pressured Isberg into resigning from Rocket Mortgage and accepting a separation package, replete with a release of Isberg's legal claims.

59.     During the June 13, 2025, meeting, Rocket Mortgage's unlawful actions further exacerbated Isberg's conditions, and resulted in Isberg experiencing an emotional breakdown, hyperventilating, and bringing the meeting to an end.

60.     Immediately following this meeting—and with reckless disregard for Isberg's safety and wellbeing—Puglise emailed Isberg a severance package, falsely entitled "Career Transition Plan".

61.     Again, Isberg did not agree to resign from Rocket Mortgage.

62.     On June 19, 2025, Puglise again emailed Isberg to further pressure her into resigning and demanded Isberg to provide a definitive response to the separation package by 12 p.m. the next day.

63.     Again, Isberg did not agree to resign from Rocket Mortgage.

64.     Isberg emailed Rocket Mortgage and informed it that Isberg had not asked for a "transition plan", nor was she considering voluntary resignation.

65.     Rocket Mortgage did not relent in pressuring Isberg to resign.

66.     On June 26, 2025, Rocket Mortgage again emailed Isberg to pressure her into resignation, this time imposing the additional condition of accepting the separation package within seven (7) days.

67.     Rocket Mortgage's unlawful actions further exacerbated Isberg's conditions and led Isberg to experiencing a severe mental health crisis requiring in-patient treatment.

68.     On June 26, 2025, Isberg pursued her ADA, FMLA, and PWDCRA accommodation and leave rights to seek treatment for the aforementioned mental health crisis, informing Rocket Mortgage that she intended to take FMLA from June 30, 2025, through July 28, 2025.

69.     In response, Rocket Mortgage engaged in further retaliation, discrimination, interference, and failure to accommodate.

70.     On June 26, 2025, Stacey Morris ("**Morris**"), Senior Benefits Specialist at Rocket Mortgage, emailed Isberg a denial of her requested FMLA leave, and falsely stated that Isberg had accumulated only 1,220 working hours toward her FMLA leave, omitting the working hours that Isberg accumulated between June 23, 2025, and June 26, 2025.

71.     Further, neither Morris nor anyone else at Rocket Mortgage informed Isberg that—based on Isberg working through June 27, 2025—she had accumulated well over the 1,250-hour requirement for FMLA benefits, and was therefore fully eligible for her June 30, 2025, requested FMLA leave.

72.     Morris also unlawfully imposed an artificial 3-day deadline for Isberg to submit her FMLA paperwork and disability certificates to Rocket Mortgage's benefits administrator and carrier, Lincoln Financial, in efforts to pressure Isberg to prematurely submit her FMLA paperwork just shy of the 1,250-hour requirement.

73.     Rocket Mortgage refused to acknowledge that Isberg's FMLA was approved or denied despite multiple request from Isberg to do so.

74.     Instead, Rocket Mortgage repeatedly demanded that Isberg submit new medical and accommodation paperwork.

75.     Isberg complied with the demands.

76.     On August 6, 2025, Isberg submitted a new accommodation request to work from home upon Isberg's anticipated release from mental health treatment.

77.     Thereafter, Rocket Mortgage's legal counsel finally confirmed that Isberg's FMLA leave request had been approved but claimed that Rocket Mortgage was "unaware of any new accommodation requests" despite Isberg's August 6, 2025 accommodation request to work from home.

78.     Isberg repeatedly followed up with Rocket Mortgage regarding the status of Isberg's accommodation request to work from home, including on September 5, 2025, September 9, 2025, and September 10, 2025.

79.     Instead of Rocket Mortgage addressing the accommodation request to work from home, Rocket Mortgage's HR Department continued to notify Isberg that she *must* return to work *in person* on Monday, September 15, 2025.

80.     To be clear, at no time did Rocket Mortgage explicitly deny Isberg's August 6, 2025 request.

81.     Instead, Rocket Mortgage refused to process the accommodation request and acted as if the accommodation request did not exist.

82.    Isberg repeatedly reminded Rocket Mortgage that she had a pending accommodation request from August 6, 2025, and reiterated that Isberg was requesting medical accommodations to work from home due to her disabilities, including renewing her request for accommodations on September 5, 2025, September 9, 2025, and September 10, 2025.

83.    As of Friday, September 12, 2025, Rocket Mortgage had still not approved Isberg's request for medical accommodations to work from home.

84.    Rocket Mortgage's refusal to process Isberg's request for medical accommodations would force Isberg, starting September 15, 2025, to drive to Rocket Mortgage and thereby jeopardize Isberg's life and the lives of others due to her disabilities.

85.    Rocket Mortgage's above actions and inactions constituted constructive discharge.

86.    No reasonable person in Isberg's position would have done anything other than resign based on Rocket Mortgage's violations of the FMLA, ADA, and PWDCRA, including discrimination, hostile work place environment, retaliation, failure to accommodate, interference with rights, and failure to engage in the interactive process.

87.    Rocket Mortgage's above actions, individually and combined, damaged Isberg in excess of $75,000.00.

## COUNT I
### FMLA Violations: Discrimination, Retaliation, and Interference

88.    Isberg incorporates her preceding allegations as if restated below.

89.     At all relevant times, Isberg was an eligible employee under the FMLA.

90.     Isberg's POTS, Hashimoto's Disease, anxiety, and depression, individually and collectively, constitute serious health conditions.

91.     At all relevant times, Rocket Mortgage was Isberg's eligible employer under the FMLA.

92.     At all relevant times, Isberg qualified for leave under the FMLA.

93.     Isberg engaged in protected activity under the FMLA by requesting and taking FMLA-qualifying leave from Rocket Mortgage.

94.     After Isberg exercised her FMLA rights, Rocket Mortgage took materially adverse employment actions against Isberg by, among other things, demoting Isberg, pressuring Isberg to resign and constructively discharging Isberg.

95.     Rocket Mortgage's above adverse employment actions occurred, at least in part, because Isberg engaged in protected activity under the FMLA and otherwise exercised her FMLA rights.

96.     Rocket Mortgage's above adverse employment actions constitute retaliation and discrimination under the FMLA.

97.     Rocket Mortgage's above adverse employment actions also constitute intentional interference with Isberg's FMLA rights, including chilling Isberg from exercising her FMLA rights in the future without fear of future retaliation and discrimination.

98.     Rocket Mortgage's above adverse employment actions were in bad faith and in known and intentional violation of Isberg's FMLA rights.

99.     Rocket Mortgage did not have reasonable grounds to believe its actions complied with the FMLA.

100.    As a direct and proximate result of Rocket Mortgage's FMLA violations, Isberg experienced harm, including loss of her job after taking protected medical leave, loss of compensation, loss of employment benefits, and loss of other pecuniary and compensatory benefits.

101.    Isberg is entitled to her lost wages, lost front pay, lost back pay, lost job benefits, attorney's fees, an award of liquidated damages, interest thereon, and the other relief sought herein.

### COUNT II
**Violations of the ADA – Discrimination, Retaliation, and Interference**

102.    Isberg incorporates her preceding allegations as if restated below.

103.    At all relevant times, Isberg was an eligible employee under the ADA.

104.    At all relevant times, Rocket Mortgage was Isberg's eligible employer under the ADA.

105.    At all relevant times, Isberg was an individual with a disability within the meaning of the ADA—namely POTS, Hashimoto's Disease, anxiety, and depression.

106.    At all relevant times, Isberg's above disabilities involved physical or mental impairments that substantially limited one or more of Isberg's major life activities.

14

107.    At all relevant times, Isberg was qualified for her position at Rocket Mortgage.

108.    At all relevant times, Isberg could perform the essential functions of her position with Rocket Mortgage, with or without reasonable accommodation.

109.    Rocket Mortgage knew or had reason to know of Isberg's disability.

110.    Rocket Mortgage took the above adverse employment actions against Isberg, including demoting and constructively discharging of Isberg, at least in part, because of her disabilities and the exercise of her rights under the ADA.

111.    Isberg's above disabilities, and the exercise of her rights under the ADA, were a determining factor in Rocket Mortgage taking adverse employment actions against Isberg.

112.    Rocket Mortgage's above adverse employment actions constitute disability discrimination and retaliation in violation of the ADA.

113.    Rocket Mortgage's above adverse employment actions also constitute interference with Isberg's ADA rights, including the right to reasonable accommodations.

114.    Rocket Mortgage discriminated and retaliated against Isberg, and interfered with Isberg's ADA rights, with malice or with reckless indifference to Isberg's rights protected under the ADA.

115.    As a direct and proximate result of Rocket Mortgage's ADA discrimination, retaliation, and interference, Isberg has suffered both economic and non-economic damages, including lost wages and earning capacity, lost employment benefits, loss of career opportunities, pecuniary losses, mental and emotional distress, humiliation and

embarrassment, loss of enjoyment of life, loss of self-esteem, anxiety, outrage, loss of personal and professional reputation, and other nonpecuniary losses.

116.    Based on Rocket Mortgage's unlawful discrimination, retaliation, and interference stated herein, Isberg is entitled to actual, compensatory, non-economic, exemplary, special, and punitive damages, as well as attorney's fees and costs.

## COUNT III
### Violation of the PWDCRA – Discrimination, Retaliation, and Interference.

117.    Isberg incorporates her preceding allegations as if restated below.

118.    At all relevant times, Isberg was an eligible employee under the PWDCRA.

119.    At all relevant times, Isberg was an individual with a disability within the meaning of the PWDCRA—namely POTS, Hashimoto disease, depression, and anxiety.

120.    At all relevant times, Isberg's above disabilities involved physical or mental impairments that substantially limited one or more of Isberg's major life activities.

121.    Isberg's disabilities were unrelated to her ability to perform the duties of her job at Rocket Mortgage.

122.    At all relevant times, Isberg was qualified for her position at Rocket Mortgage.

123.    At all relevant times, Isberg could perform the essential functions of her job at Rocket Mortgage, with or without reasonable accommodation.

124.    At all relevant times, Rocket Mortgage was Isberg's employer under the PWDCRA.

125.    Rocket Mortgage knew or had reason to know of Isberg's disabilities.

126.   Rocket Mortgage took adverse employment actions against Isberg, including demoting and constructive discharging Isberg, at least in part, because of her disabilities and exercising her rights under the PWDCRA.

127.   Rocket Mortgage took adverse employment actions against Isberg, at least in part, because she requested reasonable accommodation for her disabilities, including medical leave.

128.   Isberg's above disabilities were at least a motivating factor in Rocket Mortgage's decision to take adverse employment actions against Isberg.

129.   Rocket Mortgage's above adverse employment actions against Isberg also constitute disability discrimination and retaliation in violation of the PWDCRA.

130.   Rocket Mortgage's adverse employment actions also constitute interference with Isberg's PWDCRA rights, including the right to reasonable accommodations.

131.   Rocket Mortgage discriminated and retaliated against Isberg and Isberg's PWDCRA rights, with malice or with reckless indifference to Isberg's protected rights under the PWDCRA.

132.   Rocket Mortgage interfered with Isberg's exercise of her PWDCRA rights with malice or with reckless indifference to Isberg's protected rights under the PWDCRA.

133.   Rocket Mortgage's actions were intentional and in disregard for Isberg's rights and sensibilities.

134.    As a direct and proximate result of Rocket Mortgage's PWDCRA discrimination, retaliation, and interference, Isberg has suffered both economic and non-economic damages, including lost wages and earning capacity, lost employment benefits, loss of career opportunities, pecuniary losses, mental and emotional distress, humiliation and embarrassment, loss of enjoyment of life, loss of self-esteem, anxiety, outrage, loss of personal and professional reputation, and other nonpecuniary losses.

135.    Based on Rocket Mortgage's unlawful discrimination, retaliation, and interference stated herein, Isberg is entitled to actual, compensatory, non-economic, exemplary, special, and punitive damages, as well as attorney's fees and costs.

### COUNT IV
### Violation of the ADA and PDCRA –
### Failure to Accommodate and Failure to Engage in the Interactive Process

136.    Isberg incorporates her preceding allegations as if restated below.

137.    Both the ADA and the PWDCRA require an employer to provide reasonable accommodation to qualified individuals with disabilities unless that accommodation would pose an undue hardship.

138.    Further, the ADA imposes on covered employers, including Rocket Mortgage, a legal requirement to engage in an interactive process with disabled employees seeking a medical accommodation under the ADA.

139.    Isberg was a qualified employee under both the ADA and the PWDCRA, with or without an accommodation, or with an alleged essential job requirement eliminated.

140.   As set forth above, Isberg was disabled under the both the ADA and the PWDCRA.

141.   At all relevant times, Rocket Mortgage was Isberg's eligible employer under both the ADA and the PWDCRA.

142.   Rocket Mortgage failed to approve Isberg's request for medical accommodations to work from home, including Isberg's August 6, 2025 request to work from home as a reasonable accommodation, and her renewed requests from September 5, 2025, September 9, 2025, and September 10, 2025.

143.   Rocket Mortgage's failure to reasonably accommodate Isberg violated the ADA's accommodation requirements.

144.   Rocket Mortgage's failure to reasonably accommodate Isberg violated the PWDCRA's accommodation requirements.

145.   As set forth above, Rocket Mortgage also failed to engage in any interactive process with Isberg when she requested medical accommodations, including on August 6, 2025, September 5, 2025, September 9, 2025, and September 10, 2025.

146.   Rocket Mortgage's failure to engage in the interactive process and accommodate Isberg constitutes a separate and distinct violation of the ADA.

147.   Rocket Mortgage's refusal to engage in the interactive process and accommodate Isberg was done in bad faith.

148. As a direct and proximate result of Rocket Mortgage's failure to accommodate and failure to engage in the interactive process, Isberg has suffered both economic and non-economic damages, including lost wages and earning capacity, lost employment benefits, loss of career opportunities, pecuniary losses, mental and emotional distress, humiliation and embarrassment, loss of enjoyment of life, loss of self-esteem.

149. Based on Rocket Mortgage's failure to accommodate, Isberg is entitled to actual, compensatory, non-economic, exemplary, special, and punitive damages, as well as attorney's fees and costs.

### COUNT V
### Violation of the ADA and PDCRA –
### Hostile Work Environment

150. Isberg incorporates her preceding allegations as if fully restated below.

151. At all relevant times, Isberg was a disabled person protected by the ADA and PDCRA.

152. At the relevant times set forth above, Isberg was subjected to harassment, either through words or action, based upon her disabilities and the exercise of her rights under the ADA and PDCRA, including verbal insults, removal of job duties and responsibilities, isolation and segregation at the work place, pressuring Isberg to resign from her job, retaliation, discrimination, interference with her statutory rights, failure to accommodate, failure to engage in the interactive process, and constructive discharge.

153.   At the relevant times, the harassment created an objectively intimidating, hostile or offensive work environment that produced harm respecting an identifiable term or condition of employment, including but not limited to:

a.     Isberg's job title and duties, including Rocket Mortgage's failure to further promote Isberg and Rocket Mortgage's failure and refusal to allow Isberg to assume a leadership position;

b.     Isberg's opportunities to advance within Rocket Mortgage;

c.     Isberg's compensation;

d.     Isolating Isberg and stifling Isberg's abilities to collaborate with the rest of her team at Rocket Mortgage.

e.     Isberg's right to be free from abusive and harassing words and treatment.

f.     Constructive discharge.

154.   At all relevant times, the harassment that Plaintiff experienced was sufficiently severe or pervasive to create an abusive work environment.

155.   Defendant Rocket Mortgage's words, acts or omissions, were the direct and proximate cause of the harms described above.

156.   As a direct and proximate result of Rocket Mortgage's failure to accommodate, Isberg has suffered both economic and non-economic damages, including lost wages and earning capacity, lost employment benefits, loss of career opportunities, pecuniary losses,

mental and emotional distress, humiliation and embarrassment, loss of enjoyment of life, loss of self-esteem.

157.   Based on Defendant Rocket Mortgage's failure to take steps to prevent the hostile work environment, or indeed to counter it, Isberg is entitled to actual, compensatory, non-economic, exemplary, special and punitive damages, as well as attorney's fees and costs.

## REQUESTED RELIEF

**FOR THESE REASONS**, Plaintiff Ashley Isberg respectfully requests the following relief from this Court:

A.     Enter a money judgment in her favor against Defendant Rocket Mortgage, in an amount that the trier of fact finds Plaintiff entitled to, including, without limitation, actual, treble, compensatory, exemplary, special, and punitive damages, plus interest, costs, expenses, and statutory attorney's fees under the FMLA, the ADA, and the PWDCRA.

B.     As to Count I specifically, additionally award Isberg 1) her lost or denied wages, salary, employment benefits, and other compensation denied or lost due to Defendant's violations of the FMLA; 2) interest on said wages, salary, benefits, calculated at the prevailing rate; 3) liquidated damages equal to the aforementioned two sums; 4) reasonable attorney's fees, expert fees, and other costs of this action; and 5) equitable relief this Court deems wise; and

C.      Grant any other relief this Court deems wise and just.

Respectfully submitted,

/s/ R.J. Cronkhite
R.J. Cronkhite (P78374)
Steven M. Couch (P75833)
Gregory A. Dallas (P88475)
Cronkhite Counsel PLLC
*Attorneys for Plaintiff*
36800 Woodward Ave., Ste. 310
Bloomfield Hills, MI 48304
T: (248) 309-8601
F: (248) 256-2555
rj@cronkhitelaw.com
steve@cronkhitelaw.com
Dated: March 10, 2026        greg@cronkhitelaw.com

## JURY DEMAND

Plaintiff Ashley Isberg, through her attorneys, Cronkhite Counsel PLLC, hereby demands a jury trial for all causes of action so triable by jury.

Respectfully submitted,

/s/ R.J. Cronkhite
R.J. Cronkhite (P78374)
Steven M. Couch (P75833)
Gregory A. Dallas (P88475)
Cronkhite Counsel PLLC
*Attorneys for Plaintiff*
36800 Woodward Ave., Ste. 310
Bloomfield Hills, MI 48304
T: (248) 309-8601
F: (248) 256-2555
rj@cronkhitelaw.com
steve@cronkhitelaw.com
Dated: March 10, 2026      greg@cronkhitelaw.com